FILED
2008 Apr-14  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| SHELIA RICHIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 06-G-1623-NW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Shelia Richie, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

>    (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Randall C. Stout, determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform her past relevant work. [R. 22]. Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be

given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307. Other courts have also recognized that fibromyalgia can be disabling. Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is

6

pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its elusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

### WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

### DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "fibromyalgia, depression and gastritis."  [R. 21].  However, he found that

the plaintiff's impairments "do not meet or medically equal one of the listed impairments. . . ." [Id.].

Without question, the plaintiff has an underlying condition which could give rise to disabling pain. In applying the 11th Circuit's pain standard, the ALJ found that:

> there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, anxiety and other symptoms which the claimant alleges have precluded her from working. Neither prong of part two of the Hand/Landry standard is met, since the objective evidence does not confirm either the severity of the claimant's alleged symptoms arising from her medically documented conditions, or that those conditions could reasonably be expected to give rise to the symptoms alleged by the claimant. This is consistent with the limited positive findings in the medical evidence compared with the claimant's subjective complaints, her response to treatment shown in the medical evidence, and her testimony and statements elsewhere in the record regarding her activities of daily living.

[R. 13]. This conclusion is not based on substantial evidence.

The plaintiff was 49 years old at the time of the ALJ hearing. [R. 322]. She testified that she suffers from neck pain constantly, and the severity of the pain fluctuates depending on exertion.[1] She has difficulty sleeping at night and takes Ambien when she can afford it. [R. 331]. She testified that "I may get three hours, six is a wonderful night for me." [Id.]. A cervical MRI performed May 10, 2001, showed a small disc spur complex at C5-6, paracentral to the left, partially narrowing the neural foramen. [R. 177]. A myelogram performed June 5, 2001, indicated that a "mild and central left sided bony

---

[1] She testified that her pain is normally a three or four on a scale of zero to 10, but that with exertion, it sometimes goes to 10. [R. 324].

bar impinges the ventral sac at C5-6." [R. 200]. On February 27, 2004, the plaintiff saw her treating physician, Tim Ashley, M.D., who diagnosed "chronic back and arm pain uncontrolled" and "fibromyalgia uncontrolled." [R. 298]. She followed up with Dr. Ashley on August 3, 2004, who again assessed her pain and fibromyalgia as "uncontrolled." [R. 295]. Dr. Ashley prescribed Zanaflex, a muscle relaxer, for spasms, and Fioricet, a pain reliever containing acetaminophen, a barbituate and caffeine. [Id.].

Also on August 3, 2004, Dr. Ashley completed a Functional Assessment (Physical), in which he opined that the plaintiff's inability to stand for more than two hours, walk for more than 20 minutes, and sit for more than two hours in an eight-hour day, because of fibromyalgia and peripheral edema. [R. 291]. The ALJ gave little weight to Dr. Ashley's opinion because he found "his opinion is inconsistent with his findings as recorded in his office notes, with those of other treating and examining physicians in the record, and with the claimant's statements regarding her activities of daily living. . . ." [R. 18]. The ALJ acknowledges the plaintiff's diagnosed fibromyalgia, but attempts to explain it away by stating Dr. Ashley "has prescribed appropriate treatment." [Id.]. As noted above, the treatment prescribed by her treating physician, who found her pain and fibromyalgia to be uncontrolled, includes muscle relaxers and pain medication. Because the ALJ failed to properly refute Dr. Ashley's testimony, as a matter of law that testimony must be accepted as true.

In making his credibility finding, the ALJ found that the plaintiff's daily activities were inconsistent with the medical evidence. [R. 20]. A sample of the ALJ's findings regarding the plaintiff's daily activities follows:

> She has made statements that are consistent with good interaction with family members and the ability to drive, which is consistent with being able to perform sequential postural maneuvers to enter and exit a vehicle, with good use of both hands, with the ability to operate some hand and foot controls, and with good concentration and exercise of judgment.

[Id.]. The plaintiff actually testified that she drove "[m]aybe twice a month," so it is irrational for the ALJ to conclude the plaintiff is able to perform these maneuvers and operations on a consistent, daily basis. Similarly, the ALJ found:

> She said she could dust, sweep, clean house, do dishes and prepare simple meals, consistent with the ability to stand, walk, use her hands and concentrate, as well as to plan and execute work. She read spiritual material and horror stories, consistent with the ability to concentrate and use her hands. She could perform self care activities, consistent with the ability to use her hands and perform some reaching up [citation omitted]. In her Daily Activities Questionnaire, dated February 5, 2004, she stated that she prepared and cooked meals, shopped for personal needs twice a month, and no one helped her with shopping. This is consistent with the ability to stand, walk, use her hands, exercise judgment, and function independently. She performed household chores including cleaning and laundry, but not all the time; and ironing, but not often; still such activities are consistent with standing walking, using both hands, pushing and pulling. She watched television, including movies, Discovery and the History Channel, if she was not having an anxiety attack or her pain level was not high, two to three hours at a time, consistent with the ability to concentrate and maintain attention for at least that long at a time. About four times a week, she read, with the length of time varying with the type of book, consistent with good use of hands and concentration. She went out of the house about once a week, riding with someone else; she explained that she went to the grocery store or she might tag along with someone else [citation omitted]. This is consistent with the ability to socially interact and to get in and out of a vehicle.

[R. 20]. The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The <u>Easter</u> court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting <u>Rhines v. Harris</u>, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of <u>Hale</u>.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  <u>Hale</u>, at 1012.

Under this circuit's pain standard, objective proof of the pain itself is not required.  Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  <u>See</u> SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").  As Judge Allgood observed in <u>Lamb v. Bowen</u>:  "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever questioned the existence of

appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

The ALJ also acknowledged that the plaintiff has the severe impairment of depression. [R. 12]. Indeed, the record reflects a long history of depression, including at least four suicide attempts or gestures. In January 1995, the plaintiff slashed her wrists and was admitted to Eliza Coffee Memorial Hospital. [R. 130]. J. W. Glaister, M.D., opined that "[h]er suicidal distress is related to chronic migraine headaches and neck pain." [Id.]. Five months later, the plaintiff took an overdose of 35 Xanax, and was described as "in an ataxic disturbed state." [R. 139]. She was diagnosed with major depression, recurrent, with migraine headaches and a dependent personality disorder. [Id.]. In April, 2000, her overdose of several Elavil was described as a suicidal "gesture." The diagnosis was chronic social maladjustment/depression or adjustment reaction, a borderline personality disorder and somatization disorder with back pain. [R. 162]. In November 2003, the plaintiff was again admitted to Eliza Coffee Memorial Hospital. Her treating psychiatrist, David U. Anakwenze, M.D., diagnosed major depressive disorder, current episode severe, without psychotic features, and a borderline personality disorder. [R. 234]. Her Global Assessment of Functioning[2] was 30 upon admission. [Id.]. Dr.

---

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or nonprecedential
(continued...)

Anakwenze also diagnosed benzodiazepine[3] dependence, iatrogenic[4] type. [R. 229]. Her Global Assessment of Functioning was 55 upon discharge. [Id.].

On July 2, 2004, Dr. Anakwenze completed a Medical Source Opinion Form (Mental) in which he found the plaintiff had a marked inability to respond to customary work pressures. [R. 278]. He also found that the plaintiff had moderate

---

[2] (...continued) opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

[3] "[A]ny of a group of minor tranquilizers, having a common molecular structure and similar pharmacological activity, including antianxiety, sedative, hypnotic, amnestic, anticonvulsant, and muscle relaxing effects." Dorland's Illustrated Medical Dictionary 192 (28th Ed. 1994).

[4] "[R]esulting from the activity of physicians. Originally applied to disorders induced in the patient by autosuggestion based on the physician's examination, manner, or discussion, the term is now applied to any adverse condition in a patient occurring as the result of treatment by a physician or surgeon, especially to infections acquired by the patient during the course of treatment." Dorland's Illustrated Medical Dictionary 815 (28th Ed. 1994).

limitations in five other areas[5]. The ALJ held that Dr. Anawkenze's finding of a marked limitation in the plaintiff's ability to respond to work pressures was inconsistent with his office notes and those of Bonnie L. Atkinson, Ph.D., the Commissioner's consulting psychologist[6]. [R. 19]. Because Dr. Anakwenze is the plaintiff's treating psychiatrist and a specialist, his opinion is entitled to more weight. The history of treatment records overwhelmingly support Dr. Anakwenze's opinion. As such, it was improper for the ALJ to ignore his findings.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

An appropriate order will be entered contemporaneously herewith.

---

[5] These are: (1) respond appropriately to customers or other members of the general public; (2) use judgment in detailed or complex work-related decisions; (3) deal with changes in a routine work setting; (4) understand, remember, and carry out detailed or complex instructions; and (5) maintain attention, concentration or pace for periods of at least two hours. [R. 277-278].

[6] Dr. Atkinson, a one-time examiner of the plaintiff, diagnosed dysthymic disorder, a borderline personality disorder, and assigned the plaintiff a GAF of 60. [R. 245].

DONE and ORDERED 14 April 2008.

```
                                    /s/ J. Foy Guin, Jr.
                            _____
                              UNITED STATES DISTRICT JUDGE
                                     J. FOY GUIN, JR.
```